**Ronald FONTE, Plaintiff, Appellee,**

**v.**

**John COLLINS, et al.,
Defendants, Appellants.**

**No. 89–1796.**

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1990.

Decided March 15, 1990.

William J. Kayatta, Jr., with whom Pierce, Atwood, Scribner, Allen, Smith &

---

Lancaster, Portland, Me., were on brief, for defendants, appellants.

Murrough H. O'Brien, Portland, Me., for plaintiff, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an interlocutory appeal from the district court's denial of defendants' motion for summary judgment on the grounds of qualified immunity. The defendants, Portland, Maine, police officers, were sued under 42 U.S.C. § 1983 for allegedly violating the fourth amendment rights of the plaintiff by arresting him without probable cause. Because the officers have not shown that they are entitled to qualified immunity as a matter of law, we affirm.

As the district court's opinion makes clear, many of the facts in this case are in dispute so we only state what appears to be undisputed. At the request of plaintiff's former wife, Irene Ashjean, police officers went to Ronald Fonte's house on an island off the coast of Maine for the purpose of taking the couple's daughter, Adriene, from his custody and turning her over to Ashjean. The officers did not find Fonte and his daughter on the island, but, as they were leaving, noticed Fonte's boat approaching. They went out in their boat to intercept it. Both Fonte and his daughter were in the boat. The police advised Fonte why they were there and told him he should drive his boat to the island so they could talk to him. Fonte's boat arrived at the dock first and his daughter jumped out and ran to the house of a friend. Fonte waited for the police at the dock. After the police arrived, they arrested him and eventually charged him with obstruction of government administration. Me.Rev.Stat. Ann. tit. 17–A § 751 (1983). The charge was dropped a few months later. Fonte then filed this suit under 42 U.S.C. § 1983 alleging false arrest.

Defendants moved for summary judgment for failure to state a claim and for judgment based on the affirmative defense of qualified immunity. The district court denied the qualified immunity motion but granted summary judgment on the ground that there was no civil rights violation. *Fonte v. Collins*, 713 F.Supp. 511 (D.Me. 1989). Upon a motion to alter judgment, the district court vacated its ruling on the failure to state a claim under § 1983. *Fonte v. Collins*, 718 F.Supp. 1 (D.Me. 1989). The denial of summary judgment was not altered. This appeal of the qualified immunity ruling followed.

I.

We have jurisdiction to hear this appeal because "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final decision." *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The basic outlines of a qualified immunity defense are well known: "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Our review

> must examine the discovered facts regarding defendants' conduct relevant to the immunity claim and applying normal summary judgment principles, determine whether a genuine issue does or does not exist concerning qualified immunity.

*Unwin v. Campbell*, 863 F.2d 124, 132 (1st Cir.1988). Thus we must decide whether, given the facts in the light most favorable to the plaintiff, the police officers have established as a matter of law, that it was reasonable for them to believe that their conduct did not violate Fonte's constitution-

al rights. They have not done so. We affirm for the reasons stated in the district court's opinion and add a few observations.

## II.

■ The officers assert that Fonte was properly arrested because he obstructed government administration by using "force, violence, intimidation or engag[ing] in [a] criminal act with the intent to interfere with a public servant performing or purporting to perform an official function" in violation of Me.Rev.Stat.Ann. tit. 17–A § 751 (1983). There is no doubt that the officers were purporting to perform an official function. At this stage of the case, there is no evidence that force, violence or intimidation was used by Fonte. Thus the only question is whether a criminal act was committed with intent to interfere with public duties. The district court found that there was no evidence that any criminal act committed by the plaintiff was committed with the intent to interfere with the investigation. We concur in that finding. In addition we question whether, despite the police officers' legal authorization to take the child, it was reasonable for the police officers to believe that Fonte had committed a crime.

The criminal statute at issue states:

A person is guilty of criminal restraint ... if the parent of a child ... knowing he has no legal right to do so ... takes, retains, or entices the child from the custody of his other parent ... with the intent to remove the child from the State or to secret him and hold him in a place where he is not likely to be found.

Me.Rev.Stat.Ann. tit. 17–A § 303. Assuming that the police officers reasonably believed that Fonte was not legally entitled to custody of the child, that does not mean he was guilty of criminal restraint. On the facts before us, we see no evidence that Fonte intended to remove the child from Maine or was secreting her in a place where she was not likely to be found. The police found Fonte with his daughter on their way to Fonte's home on a small island. When the police officers stopped him at sea, he offered to turn the daughter over to the police. (There is a dispute about the exact circumstances and intent of his offer.) A police officer, watching the daughter run away from the boat, could not reasonably believe that Fonte intended to hide the child in a place where it would be unlikely that she would be found. Fonte obviously had not actually hidden her, because he stayed at the dock to talk to the police. The island was small so it would be difficult for her to hide. Finally, there is no evidence that she was actually hiding with the intent not to be found. She was found in a nearby house with apparent ease by the police.

Moreover, the fact that Fonte stayed on the dock waiting for the officers to arrive raises a question whether Fonte was intending to obstruct the investigation at all.

The district court's ruling is affirmed for the reasons stated and the reasons found in his opinion.

TORRUELLA, Circuit Judge (dissenting).

I disagree with the majority's conclusion, which is based, in my opinion, upon an *ex post facto* interpretation of an unclear Maine law, Me.Rev.Stat.Ann. tit. 17–A, § 751 (1983), not on what a reasonable police officer would have done under the circumstances. A reasonable police officer, upon observing the crucial facts of this case, could have concluded, (1) that Fonte was not legally entitled to retain custody of the child, (2) that the child ran from the dock into hiding upon instructions imparted by Fonte, and (3) that, at the time this took place, the child might have been secreted away and not found without some difficulty. Thus, the police officers could have reasonably concluded that Maine law had been violated by Fonte and that there was probable cause for Fonte's arrest.

Under a typical custody dispute scenario, the paramount duty of the State is to protect the child. Inhibiting a police officer's good faith discretion by imposing the threat of civil liability under circumstances such as those of the present case, is contrary to well-established doctrine in the area of qualified immunity. *See Harlow v.*

*Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982) (holding that qualified immunity exists because there is a "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority"); *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).

In this case, the police officers may have been mistaken in their interpretation of Maine law, but they did not act unreasonably, particularly in light of the fact that they were interpreting what is hardly clearly established law. The officers should not be held liable in damages "for mere mistakes in judgment, whether the mistake is one of fact or of law." *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).

For these reasons, I believe that the district court was mistaken in not permitting the use of the defense of qualified immunity in this lawsuit.